MANATUCK ASSOCIATES *v.* CONSERVATION COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
(10538)

ELIZABETH M. GAYNOR ET AL. *v.* CONSERVATION COMMISSION OF THE TOWN OF FAIRFIELD ET AL.
(10539)

DALY, FOTI and HEIMAN, Js.

Argued June 1—decision released September 1, 1992

*Christopher J. Smith,* for the appellants (Elizabeth M. Gaynor et al., defendants in the first case, plaintiffs in the second case).

*Ronald J. Pacacha,* with whom, on the brief, was *John F. Fallon,* for the appellee (Manatuck Associates, plaintiff in the first case, defendant in the second case).

*Donald C. Collimore,* assistant town attorney, for the appellee (named defendant in both cases).

FOTI, J. These are consolidated appeals, brought by Elizabeth M. Gaynor and other neighboring property owners (neighbors), from the decision of the trial court sustaining in part and dismissing in part two

appeals from the decision of the defendant conservation commission of the town of Fairfield (commission).[1] The first appeal challenges the trial court's reversal of the commission's denial of Manatuck Associates' application for a permit to conduct regulated activities on eight lots in a proposed ten lot subdivision. The second appeal challenges the trial court's affirmance of the commission's approval with conditions as to the remaining two lots.

The following facts are pertinent to these appeals. Manatuck Associates (Manatuck) owns thirty-five acres of abandoned farmland located in the Southport section of the town of Fairfield. Manatuck proposed to subdivide the parcel into residential building lots in order to construct ten luxury homes. The land, which contains approximately eleven acres of regulated wetlands, is located within the watershed of Great Brook, which also traverses the site. The parcel is bisected by Morehouse Lane, a narrow country road. Pursuant to the town's inland wetlands and watercourses regulations, Manatuck was required to apply to the commission for a permit before conducting any regulated activities[2] associated with its proposed development of this parcel.

The wetlands permit application that is the subject of the present appeals was preceded by an application filed in February, 1989, which, in addition to proposing regulated activities related to lot development (i.e., storm water discharge, filling, excavation), contained

---

[1] The commission is the duly designated municipal agency entrusted with enforcement of the Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45.

[2] Section 2.11 of the Fairfield inland wetlands and watercourses regulations defines regulated activity as "any operation within or use of a wetland or watercourse involving removal, relocation or deposition of material, or any obstruction, construction, alteration; or pollution, of such wetland or watercourse, except as otherwise indicated in Section 3 of these Regulations." (Section 3 specifies certain permitted uses and operations that are not involved in the present appeal.)

a detailed proposal to improve access to the ten building lots through extensive reconstruction of Morehouse Lane. This earlier application was denied by the commission, despite a staff report recommending conditional approval, primarily because the proposed road and culvert improvements would severely impact on the adjacent wetlands. On June 2, 1989, Manatuck filed another application, substantially the same as the first, except that it eliminated all reference to the Morehouse Lane improvements. After due notice and public hearings on the second application, the commission voted unanimously on October 19, 1989, to approve it with certain specified conditions as to two of the lots and to deny it without prejudice with respect to the remaining eight lots.

Manatuck thereafter appealed from the commission's denial with respect to the eight lots, claiming, inter alia, that the denial was arbitrary, capricious, and an abuse of discretion, and that it was unsupported by substantial evidence in the record.[3] The neighbors intervened pursuant to General Statutes § 22a-19 (a), and appealed from the commission's approval of the permit for the two lots, claiming that Manatuck's application was incomplete in that it failed to address regulated activities necessary for the proposed subdivision's access. The trial court sustained Manatuck's appeal and dismissed the neighbors' appeal, in effect ordering the commission to approve the application in its entirety. The present appeals followed.

On appeal, the commission, as appellee, claims that the trial court improperly disregarded substantial evidence in the record that supported the commission's decision to approve the development of two lots while postponing development of the remaining eight, and

[3] The commissioner of environmental protection was named as a defendant in the original appeal but is not a party to the present appeal.

improperly substituted its own evaluation of the evidence for that of the commission. The neighbors, who challenge the trial court's decision inasmuch as it now permits Manatuck to proceed with development on all ten lots, claim that the trial court (1) improperly concluded that an applicant can avoid wetlands review simply by eliminating from its plans all regulated activities associated with required road and bridge improvements while seeking approval of a ten lot subdivision, and (2) exceeded its scope of review by substituting its findings and conclusions for that of the commission.

The dispositive issue in these appeals is whether the trial court improperly found that the decision of the commission to approve Manatuck's application in part and to deny it in part was unsupported by substantial evidence. We disagree with the trial court that there was no substantial, reliable and probative evidence in the record to support the commission's decision. Our review of the record reveals that there was such evidence.

We first set forth the proper standard for the trial court's review of the decision of an inland wetlands commission. "[I]n an appeal from a decision of an inland wetlands commission, a trial court must search the record of the hearings before that commission to determine if there is an adequate basis for its decision." *Gagnon* v. *Inland Wetlands & Watercourses Commission,* 213 Conn. 604, 611, 569 A.2d 1094 (1990). Even if the agency's reasons for denying an application are merely speculative, "the reviewing court must search the record for reasons to support the agency's decision . . . and, upon finding such, uphold that decision regardless of the language used by the agency in stating its reasons for the denial." *Madrid* v. *Inland Wetlands Agency,* 25 Conn. App. 446, 451, 594 A.2d 1037, cert. denied, 220 Conn. 915, 597 A.2d 334 (1991). "The agency's decision must be sustained if an examination

of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. *Feinson* v. *Conservation Commission,* 180 Conn. 421, 425–26, 429 A.2d 910 (1980), quoting *Lawrence* v. *Kozlowski,* 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977), and cases there cited." (Citations omitted; internal quotation marks omitted.) *Huck* v. *Inland Wetlands & Watercourses Agency,* 203 Conn. 525, 539–41, 525 A.2d 940 (1987). If there is contradictory evidence in the record, the reviewing court must take that into account; however, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) Id., 542; *Milardo* v. *Inland Wetlands Commission,* 27 Conn. App. 214, 218, 605 A.2d 869 (1992).

While we find that there was sufficient evidence to support the commission's decision solely on the basis of lot development concerns, we must address whether the commission properly considered the question of improvements along Morehouse Lane because the trial court based its decision largely on that issue.

The trial court found that in approving only two of Manatuck's ten proposed lots, "[t]he commission acted outside the scope of its authority in considering the anticipated improvements to the access road." The court further found that the commission's decision "contains mere speculation as to the impact on drainage along Morehouse Lane. The commission's decision turns on speculative considerations concerning matters not a part of the application or the record before it." The court found that "in determining that Morehouse

Lane 'of necessity' must be reconstructed to provide lot access . . . and then conditioning subsequent approval of [Manatuck's] application on 'securing approval for a permanent road access route' . . . the commission sought to regulate the width of Morehouse Lane, a power that has been given to the planning and zoning commission under General Statutes §§ 8-25 and 8-26.''

We recognize at the outset that road improvements per se are not within the jurisdiction of an inland wetlands agency. ''[L]ocal inland wetland bodies are not little environmental protection agencies. Their environmental authority is limited to the wetland and watercourse area that is subject to their jurisdiction. They have no authority to regulate any activity outside their jurisdictional limits.'' *Connecticut Fund for the Environment, Inc.* v. *Stamford*, 192 Conn. 247, 250, 470 A.2d 1214 (1984). Moreover, ''although in considering an application for a permit to engage in any regulated activity a local wetland agency must, under § 22a-41, take into account the environmental impact of the proposed project, it is the impact on the regulated area that is pertinent, not the environmental impact in general.'' Id. This was not, however, a case in which the commission based its decision on a matter of a ''noninland wetlands nature.'' Id., 251. We disagree with the trial court that in denying Manatuck's application as to eight of the proposed lots, the commission was required to forego any consideration of the Morehouse Lane access road.

General Statutes § 22a-41[4] provides that in deciding whether to approve or to deny an application to conduct regulated activities, a wetlands commission must

---

[4] General Statutes § 22a-41 provides: ''(a) In carrying out the purposes and policies of [the Inland Wetlands and Watercourses Act], including matters relating to regulating, licensing and enforcing of the provisions thereof,

consider *"all relevant facts and circumstances, including but not limited to . . .* [inter alia] [t]he suitability or unsuitability of such acti*vity to the area for which it is proposed."* (Emphasis added.) Section 6 of the town of Fairfield inland wetlands and watercourses regulations contains similar language to that of General Statutes § 22a-41.[5] Section 4.2 of the town regulations authorizes the commission to regulate "those activities which *directly or indirectly* [impact on] inland wetlands and watercourses."[6] "As these regulations were

---

the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed action;

"(2) The alternatives to the proposed action;

"(3) The relationship between short-term uses of the environment and the maintenance and enhancement of long-term productivity;

"(4) Irreversible and irretrievable commitments of resources which would be involved in the proposed activity;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened; and

"(6) The suitability or unsuitability of such activity to the area for which it is proposed.

"(b) In the case of an application which received a public hearing, a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist. In making his finding the commissioner shall consider the facts and circumstances set forth in subsection (a). The finding and the reasons therefor shall be stated on the record."

[5] "6.1 The Agency shall consider the following in making its final decision on a permit application:

6.1.1 All evidence offered at or before any public hearing.

6.1.2 Any reports from other commissions and/or federal or state agencies, including the Fairfield County Soil and Water Conservation District and/or the Connecticut Department of Environmental Protection.

6.1.3 Additional requested information.

6.1.4 All relevant facts and circumstances, including but not limited to the following:

\* \* \*

6.1.4.6 The suitability of such action to the area for which it is proposed. . . ."

[6] "4.2 By the terms of the definition of a regulated activity the Agency shall regulate only those activities which directly or indirectly:

4.2.1 remove material from;

4.2.2 relocate material on;

enacted under authority of the . . . Wetlands and Water Courses Act [General Statutes §§ 22a-28 through 22a-45] the same canons of construction are applicable as though [they] were enacted as a state statute." *Aaron* v. *Conservation Commission,* 183 Conn. 532, 537, 441 A.2d 30 (1981).

It is undisputed that one of the "relevant facts and circumstances" related to the development of Manatuck's subdivision was the question of access to the proposed lots. In its first application to the commission, Manatuck had addressed the access problem by proposing extensive road improvements and culvert reconstruction at the point where Morehouse Lane crosses Great Brook. Although Manatuck deleted all reference to road and culvert repairs from its second application, Manatuck continued to recognize that such repairs were essential. Manatuck's representative stated emphatically at the public hearing on September 5, 1989, that "[i]t's a hazardous road; it's in terrible condition, and it should be dealt with." At the October 3, 1989 public hearing, he conceded that "any improvements to Morehouse Lane with regard to improving the road for subdivision approval, ultimate subdivision approval would involve encroachments in the wetlands area, the Great Brook area."

At the October 3, 1989 public hearing, Judy Slayback, the neighbors' environmental expert, indicated that it was impossible to determine the environmental impact of Manatuck's project without considering the potential road improvements.[7] Manatuck disputed Slayback's

4.2.3 deposit material in;

4.2.4 construct;

4.2.5 obstruct;

4.2.6 alter, or

4.2.7 pollute inland wetlands and watercourses."

[7] "I have to state for the record that in reviewing application 89 No. 7, I had to, in good conscience, evaluate the fact that in order to build this subdivision, you have to have standard roads to access the site, sites. You have to have drainage improvements. You may need to have storm water

testimony and stated repeatedly that the road issue was irrelevant to the commission's consideration of its present application, noting that this was a planning and zoning, not a wetlands concern. Manatuck pointed out that if the town plan and zoning commission later determined that Morehouse Lane did need improvement, Manatuck or the town, or both, would be before the wetlands agency again to obtain permission for the road reconstruction. We note with interest that on April 10, 1990, the Fairfield town plan and zoning commission voted to deny Manatuck's subdivision application in connection with the development of lots two and three principally because the existing access road, Morehouse Lane, is "totally inadequate to serve additional homes." Seven of the eight reasons for the zoning commission's denial address the deteriorated condition of Morehouse Lane.[8] The result of that denial is that extensive reconstruction of Morehouse Lane—whether it is undertaken by Manatuck or the town of Fairfield—is inevitable if Manatuck is ever to build its proposed ten lot subdivision. A copy of the zoning commission's decision was part of the record before the trial court when it rendered its decision.

---

detention or retention facilities. I don't know. That's more of an engineering issue in terms of whether those latter needs are met. So, therefore, many of the ways that I approached this analysis was keeping in mind that the impacts of this proposed application 89 No. 7 are not just those from the ten lots and the million or 2 million dollar houses, but also what is needed to get to those lots. As was previously mentioned, the existing Morehouse Lane spans the width from 10 to 16 feet throughout its length. It is subject to anywhere from a few inches of flooding, probably on an annual basis, to up to 5 feet of flooding during the projected 100-year design storms. It also crosses the Great [Brook] wetland watercourse corridor. There are many concerns and issues that are inherent with any road improvements which will have to be made in order to build the ten lots. You cannot evaluate the building of the ten lots without consideration of those issues."

[8] We render no opinion on the propriety of the zoning commission's decision, but refer to it only to reinforce the point that inadequate subdivision access was not, contrary to the trial court's conclusion, a matter of "mere speculation."

The foregoing clearly demonstrates that, contrary to the decision of the trial court, the need to make improvements to Morehouse Lane was not merely speculative. The trial court correctly noted that "the planning and zoning commission, not the inland wetlands commission, has the authority to require the widening of existing roads or the construction of new roads to service a subdivision." In deciding whether to approve or to deny Manatuck's application, however, the commission was not required to disregard the fact that these improvements *inevitably* would have to be made in order to accommodate a ten lot subdivision.

Manatuck has based much of its argument on its claim that Morehouse Lane is a public road, and therefore such improvements are not Manatuck's responsibility. The trial court determined, without evidence before it, that Morehouse Lane was, in fact, a public road. On that basis, the trial court further determined that the commission could not properly base its decision on any future improvements to the road because these improvements would be the responsibility of the town of Fairfield. We need not decide whether Morehouse Lane was a public road. Under the Fairfield regulations, the commission acted within the scope of its authority in determining that inevitable road construction related to the development of Manatuck's subdivision—regardless of whether it was performed by Manatuck or the town of Fairfield—would have an adverse impact on the wetlands area and necessitated a postponement in the development of some of the lots.

To adopt Manatuck's view would inhibit an inland wetlands agency from considering all pertinent "facts and circumstances" related to the "suitability or unsuitability of [a project] to the area for which it is proposed." General Statutes § 22a-41. On the basis of the facts of this case, we do not agree that the commission was required to forestall consideration of the

impact of road improvements on the wetlands area, given that it was undisputed that such improvements inevitably would have to be made.

There is no question that activities occurring outside a wetlands area may have a significant adverse impact on the wetland itself. *Mario* v. *Fairfield,* 217 Conn. 164, 170, 585 A.2d 87 (1991); *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 561, 552 A.2d 796 (1989); see T. Tondro, Connecticut Land Use Regulation, p. 130. Obviously, pollution of wetlands can be "caused" by actions on parcels of land adjacent to and perhaps even remote from designated wetlands areas.

The legislature, in enacting General Statutes § 22a-42, has given municipalities a broad grant of authority to carry out and effectuate the purposes of the Inland Wetlands and Watercourses Act. To interpret the act as precluding the commission from taking into consideration *all* of the facts and circumstances related to a wetlands permit "would clearly work to undermine some of the basic purposes of the act, which seeks not only to protect the state's inland wetlands and water courses, from pollution, but also to preserve their very existence and protect them from any disturbance, whether polluting or not, which could affect their 'conservation, economic, aesthetic, recreational' or other values. See General Statutes § 22a-36." *Aaron* v. *Conservation Commission,* supra, 551.

Apart from the road concerns, there was evidence in the record that lot development activities alone would have an impact on the wetlands. While Manatuck provided certain sediment and erosion control specifications and proposed installation of antitracking aprons, downslope silt fencing and stockpiled areas, as well as seeding and mulching along exposed surfaces, the commission concluded that these measures were not sufficient to counteract the anticipated impact on the

wetlands area. With respect to storm water runoff associated with development, there was conflicting evidence in the record pertaining to its harmful effects. Manatuck proposed using roof leader dry wells. The commission, on the basis of its staff recommendations, determined that these would not sufficiently compensate for the runoff. The commission found that the application contained numerous regulated activities involving runoff, drainage and flooding that would adversely affect the wetlands.

The trial court noted that the commission relied heavily on its staff report, which contradicted an earlier staff report prepared in connection with Manatuck's first application. The earlier report had recommended approval of all ten lots, with certain specified conditions. Between the time the first and second reports were prepared, the Fairfield conservation director wrote to Manatuck's attorney to explain that he had examined the proposal more thoroughly in connection with the second application, and now believed the proposal would have "significant adverse effect on the regulated area." The commission was not obligated to adopt the conclusions of its original staff report, particularly where the commission did not adopt it in the first place; the earlier application was denied even though the staff report had recommended approval.

Manatuck argues that the court correctly concluded that the commission had improperly based its decision entirely on the staff report and had disregarded the only expert testimony submitted, which favored the proposed ten lot subdivision. Manatuck relies on *Feinson* v. *Conservation Commission,* supra, and *Tanner* v. *Conservation Commission,* 15 Conn. App. 336, 544 A.2d 258 (1988). In *Feinson,* our Supreme Court concluded that "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically com-

plex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." *Feinson* v. *Conservation Commission,* supra, 429; *Milardo* v. *Inland Wetlands Commission,* 27 Conn. App. 214, 222, 605 A.2d 869 (1992).

In the present case, the commission's denial, in part, of the requested wetlands permit was supported by the report submitted by the soil erosion and sediment control officer and conservation enforcement officer of the commission, along with the testimony of neighbors as to existing flooding problems at the site. Manatuck was afforded a timely opportunity to rebut the evidence submitted. The report was part of the record in the application; it was known to Manatuck and available for rebuttal. "An agency decision must be based on reliable evidence made public and the applicant must have an opportunity to respond to agency concerns." *Kaeser* v. *Conservation Commission,* 20 Conn. App. 309, 314, 567 A.2d 383 (1989). Nonexperts may offer reliable and substantial evidence. Id., 315. "Moreover, there is a 'presumption that public officials acting officially properly performed their duties.' *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 58–59, 221 A.2d 589 (1966). This encompasses the presumption that the public official is qualified in the field wherein his or her official duties lie until the contrary is shown. *State* v. *Main,* 69 Conn. 123, 140, 37 A. 80 (1897)." *Kaeser* v. *Conservation Commission,* supra, 320–21 (*Berdon, J.,* concurring).

The court concluded that the staff report, on which the commission relied in denying the application, was tainted and not reliable evidence. In so doing, the trial court substituted its judgment for that of the commission. "An administrative agency is not required to believe any witness, even an expert. . . . Nor is an agency requested to use in any particular fashion any of the materials presented to it as long as the conduct

of the hearing is fundamentally fair." (Citations omitted.) *Manor Development Corporation* v. *Conservation Commission,* 180 Conn. 692, 697, 433 A.2d 999 (1980).

The reasons given by the commission for the approval in part and denial in part of Manatuck's application for a permit were supported by substantial evidence. Nothing in the record leads us to conclude that the commission's denial was illegal, arbitrary and capricious, or fundamentally unfair. The commission properly exercised its discretion in acting on Manatuck's application.

The judgment in the first case (Docket No. 10538) is reversed and the case is remanded to the trial court with direction to render judgment dismissing Manatuck's appeal. The judgment in the second case (Docket No. 10539) is affirmed.

In this opinion the other judges concurred.