[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
ADMINISTRATIVE APPEAL
This is an appeal from a decision of the defendant, Conservation Commission of the Town of Fairfield denying the application of the plaintiff, Richard D. Melko for permission to construct a single family home on a lot to be created by the CT Page 380-V resubdivision of an existing lot presently improved with single family home occupied by the plaintiff and his family. The plaintiff claims aggrievement in such denial by the defendant. There apparently is no dispute as to the issue of aggrievement and the court finds that the plaintiff is an aggrieved party.
The facts maybe summarized as follows.
On August 12, 1991, the plaintiff filed his Inland Wetlands and Watercourses permit application seeking to construct the aforesaid single family home on that lot to be created by subdivision of the family residence located at 939 Stillson Road, Fairfield, Connecticut. The defendant commission serves as the Inland Wetlands agency for the Town of Fairfield and is empowered under chapter 440 of the Connecticut General Statutes to perform the function of said agency. Notice of the plaintiff's application was published on August 19, 1994. Notice of the public hearing to be held on the application was published on September 23 and 27, 1994. (ROR, Item 30.) On October 6, 1994, the commission continued the hearing to November 3, 1994 to allow Melko to submit certain additional information requested by the commission staff. (ROR, Items 33 and 34.) On November 3, 1994, the commission tabled the application until December 1, 1994. (ROR, Items 41 42.) On December 1, 1994, the commission continued the hearing to CT Page 380-W December 29, 1994. (ROR, Items 46, 47 and 48.) The hearing was held on December 29, 1994 and the commission decided to hold the hearing open until 11 p. m. on January 3, 1995, so that the commission members could visit the site. (ROR, Items 50 and 57.) The hearing closed on January 3, 1995. (ROR, Item 58.)
On January 5, 1995, the commission tabled the application until January 19, 1995. (ROR, Item 58.) The commission rendered its decision to deny the application on January 19, 1995 and Melko was sent a notice of denial, with reasons stated therein, by letter dated January 23, 1995. (ROR, Items 61 and 62.) Notice of the denial of the plaintiff's application was published on January 25, 1995. (ROR, Item 63.) Melko now appeals from the denial of his application.
The plaintiff's amended complaint alleges that in denying his application the commission acted illegally, arbitrarily and in abuse of the discretion vested in it as an administrative agency in that:
 a. The Commission failed to approve the application despite the fact that it conforms to its own Regulations;
b. The Commission considered factors not contained in CT Page 380-X the Regulations or relevant thereto;
 c. The Commission engaged in an improper and erroneous interpretation of its regulations;
 d. There was no substantial evidence of Record before the Commission that reasonably supported the Commission's findings and decision and, in fact the Record contains substantial evidence contradicting those findings and decisions;
 e. The denial of the application represented a reversal of its previous position and regulatory interpretations as evidenced by a prior decision on a similar application involving property adjacent to the plaintiffs' property.
 f. The Commission's decision did not substantially advance any legitimate state interest as applied to the plaintiff's lot.
 g. As a result of the commissions decision, the plaintiff has been denied all beneficial use of the land that was otherwise usable by him.
"In challenging an administrative agency action, the CT Page 380-Y plaintiff has the burden of proof. . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. . . . In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . The United States Supreme Court, in defining substantial evidence in the directed verdict formulation, has said that it is something less CT Page 380-Z than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Samperiv. Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
(1993).
In support of his position, the plaintiff alleges that the commission failed to follow its regulations and based its decision to deny the plaintiff's application upon speculative considerations outside the scope of its regulations. Specifically, Melko premises this argument on "Finding F" of the commission's denial of his application which states, "[w]hile a developer can construct a building within a 10 foot — 15 foot wide buffer around the foundation, actual occupation of a single family home requires a reasonable amount of space for yard area in order to keep nature at bay." (Plaintiff's Brief, p. 8; ROR, Item 62.) Melko construes "Finding F" as establishing that the commission did not follow its regulations and relied on speculative considerations when considering the plaintiff's CT Page 380-AA application. The plaintiff does not, however, specify which regulations the commission failed to follow or what speculative conditions the commission relied upon in reaching its decision. "The failure to brief an issue adequately constitutes abandonment of that issue." Harris v. Correction Commissioner,40 Conn. App. 250, 261, 671 A.2d 359 (1996); see also Latham Associates, Inc. v. William Raveis Real Estate, Inc.,218 Conn. 297, 300, 589 A.2d 337 (1991); Bigley v. Board of ZoningAppeals, Superior Court, judicial district of Fairfield, Docket No. 307018 (April 28, 1995, Levin, J.).
Melko next contends that the commission's decision was not supported by substantial evidence in the record. Specifically, the plaintiff argues that the commission impermissibly disregarded the testimony of the plaintiff's experts, Messrs. Pidluski and Stevens, who were the only experts to testify before the commission at the hearing.
The first expert to testify on behalf of Melko at the December 29, 1994 hearing was Mr. Gregory Pidluski, a licensed professional engineer and land surveyor employed by Fuller 
Company. (ROR, Item 50, pp. 22-36.) Pidluski testified that the closest the proposed house foundation would come to the wetland soils is four and one-half feet. (ROR, Item 50, p. 34.) Pidluski then testified that "the house can be constructed CT Page 380-BB without disturbing the wetland soils." (ROR, Item 50, p. 35).
Also testifying on behalf of Melko at this hearing was Mr. Kenneth C. Stevens, president of Soil Science and Environmental Services. (ROR, Item 50, p. 37.) Stevens' testimony included the submission of two documents to the commission which were discussed during Stevens' testimony. (ROR, Item 50, pp. 36-62.) The first document submitted to the commission by Stevens was a letter from Stevens to Melko examining and criticizing the contents of a previous staff review of the Melko's application, and setting forth the facts regarding the application as determined by Stevens. (Plaintiff's Brief, pp. 3-4; ROR, Item 36; ROR, Item 50, pp. 44-52.) Stevens also submitted an Environmental Report dated December 27, 1994 and prepared by Edward M. Pawluk, Senior Biologist of Soil Science and Environmental Services. (Plaintiff's Brief, p. 4; ROR, Item 56; ROR, Item 50, pp. 36-44.) Stevens testified that the proposed house and its deck will be two feet and one foot from the wetlands respectively, and this proximity of the proposed house to the wetlands will not have any effect on the wetlands. (ROR, Item 50, pp. 44-45.) Later in the hearing Stevens clarified this position by testifying that the proposed house would have an unmeasurably small impact on the wetlands. (ROR, Item 50, p. 51.) The testimony of Messrs. Pidluski and Stevens is that the resubdivision and construction proposed by the plaintiff can be CT Page 380-CC accomplished without damaging any wetlands. (ROR, Item 50, pp. 22-62.) The plaintiff contends that the commission was bound to accept this testimony and approve his application.
In response the commission argued that despite the testimony offered by Pidluski and Stevens, its denial of Melko's application is nonetheless supported by substantial evidence existing in the record. The commission asserts that support for its decision can be found in commission and staff concerns regarding the lack of any feasible alternatives offered by the plaintiff; the lack of any runoff calculations submitted by the plaintiff; and the dispute as to the exact boundary of the wetlands.
"[A] lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues . . . in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Feinson v.Conservation Commission, 180 Conn. 421, 429, 429 A.2d 910
(1980); see also Manatuck Associates v. Conservation Commission,28 Conn. App. 780, 792-93, 614 A.2d 449 (1992). "While . . . an administrative agency is not required to believe any of the witnesses, including expert witnesses . . . it must not disregard the only expert evidence available on the issue when CT Page 380-DD the commission members lack their own expertise or knowledge." (Citations omitted.) Milardo v. Inland Wetlands Commission,27 Conn. App. 214, 222, 605 A.2d 869 (1992), quoting Tanner v.Conservation Commission, 15 Conn. App. 336, 341, 544 A.2d 258
(1988). Feinson v. Conservation Commission, supra, however, is not to be read so narrowly that "in technically complex matters, expert testimony is the only acceptable substantial evidence. This position would . . . reduce the agency hearings to a nose count of experts; plaintiffs: 2, agency: 0. It would [make] irrelevant all other testimony. . . ." Kaeser v. ConservationCommission, 20 Conn. App. 309, 314, 567 A.2d 383 (1989). "Nonexperts may offer reliable and substantial evidence."Manatuck Associates v. Conservation Commission, supra,28 Conn. App. 793, citing Kaeser v. Conservation Commission, supra,20 Conn. App. 315. A conservation commission's staff may offer reliable and substantial evidence. Manatuck Associates v.Conservation Commission, supra, 28 Conn. App. 792-93. Similarly, in Bradley v. Inland Wetlands Agency,28 Conn. App. 48, 55-56, 609 A.2d 1043 (1992), the court held that a city engineer and a public works director could provide substantial evidence on which an inland wetlands agency could rely. "Moreover, there is a presumption that public officials acting officially properly performed their duties. . . . This encompasses the presumption that the public official is qualified in the field wherein his or her official duties lie CT Page 380-EE until the contrary is shown." (Citations omitted; internal quotation marks omitted.) Manatuck v. Conservation Commission,
supra, 28 Conn. App. 793.
An inland wetlands permit applicant must demonstrate that the proposed development plan is the only feasible and prudent alternative that exists. Samperi v. Conservation Commission,
supra, 226 Conn. 593. General Statutes § 22a-41 (b) provides in pertinent part that "a permit shall not be issued unless the commissioner finds that a feasible and prudent alternative does not exist." Section 7 of the Inland Wetlands and Watercourses Regulations of the Town of Fairfield (regulations) is entitled "Application Requirements." Section 7.4 of the regulations provides in pertinent part that "[a]ll applications shall include . . . (f) [a]lternatives considered by the applicant and why the proposal to alter wetlands set forth in the application was chosen. . . ." Section 10 of the regulations is entitled "Considerations for Decision." Section 10.2 of the regulations provides in pertinent part that "[t]he agency shall consider . . . (b) [t]he alternatives to the proposed action including a consideration of alternatives which might enhance environmental quality or have a less detrimental effect, and which could feasibly attain the basic objectives of the activity proposed in the application." Section 8 of the regulations is entitled "Application Procedures." Section 8.8 of the regulations CT Page 380-FF provides in pertinent part that "[i]ncomplete applications may be denied."
Conservation Director Thomas Steinke, in his recommendation for denial dated December 6, 1995, stated that "[t]he applicant provided no substantive review of feasible and prudent alternatives such as relocating the proposed house further away from the wetlands, or by redesigning the structure to eliminate a lower floor on grade, or by using the lot area for a different purpose that does not conflict with its wetlands nature. . . ." (ROR, Item 49, p. 10.) Steinke reiterated this concern when testifying before the commission at the hearing held on December 29, 1994. (ROR, Item 50, p. 73.) Additionally, the commission received two earlier staff reports indicating that Melko's application was fatally insufficient because it included no evaluation or description of alternatives to the proposed activity. (ROR, Items 29 and 45.) Conservation Administrator Annette Jacobson, in her interim recommendation for denial dated September 26, 1994, stated that "[n]o evaluation or description of alternatives was provided by the applicant therefore the application is insufficient and provides reasonable cause for denial . . . ." (ROR, Item 29.) The only alternative to the commission's concern over feasible alternatives offered by the plaintiff was that the proposed house could be moved back as much as five feet. (ROR, Item 50, p. 43.) Based upon Melko's CT Page 380-GG failure to demonstrate that no reasonable and prudent alternative exists, the commission was precluded from approving Melko's application.
Steinke also stated in the recommendation for denial, dated December 6, 1994, that "no runoff calculations were provided for the existing or proposed driveway areas on the existing and proposed lots." (ROR, Item 49, p. 10.) When testifying before the commission, Steinke stated that the application was deficient because it lacked these runoff calculations. (ROR, Item 50, p. 72.) Furthermore, the commission had received two earlier staff reports indicating that Melko had failed to submit runoff calculations. (ROR, Items 29 and 45.)
Stevens, Melko's expert, testified that this application did not require that runoff calculations be made because the proposed construction would only result in a "net gain of 1300 square feet of impervious area which is pretty darn minute. . . ." (ROR, Item 50, p. 49.) Melko's refusal to submit runoff calculations rendered Melko's application incomplete.
Section 7.5 of the regulations provides in pertinent part, "[i]f the proposed activity involves a significant activity . . . additional information . . . including but not limited to the following is required: . . . (c) Mapping of soil types . . . (the Agency may require the applicant to have the wetlands CT Page 380-HH delineated in the field by a soil scientist and that field delineation incorporated onto the site plan.)" Steinke emphasized in his December 6, 1994 recommendation for denial that "[t]he applicant's map depicts four different certified soil scientist's delineations for the same soil boundary line. . . ." (ROR, Item 49, p. 9.) Steinke also testified before the commission on December 29, 1995, that four different soil scientists had drawn four different wetlands boundary lines. (ROR, Item 50, pp. 66-70.) Table A, included in the recommendation for denial, indicates that four different soil surveys were performed on the following dates by the following soil scientists: (1) March 20, 1984 by Bruce Laskey; (2) May 2, 1989 Jamie L. James; (3) June 4, 1992 by Roy Shook, Jr.; and (4) November 30, 1993 by Kenneth Stevens. (ROR, Item 49, p. 6, Table A.) In an earlier recommendation for denial, dated December 1, 1994, Steinke cited the multiple soil delineations as a ground for denying Melko's application. (ROR. Item 45.) Steinke concluded the recommendation for denial dated December 6, 1994, by stating that Melko's application, "if approved, will have a significant, adverse and unnecessary effect on both the regulated area and the proposed house and yard area. This application should be denied." (ROR, Item 49.) Furthermore, Jacobson stated in her interim recommendation for denial that "[t]he proposal offered by the applicant for the new dwelling will have significant, adverse and unnecessary impacts on the CT Page 380-II wetlands and regulated areas." (ROR, Item 29.)
The commission in denying the application made the following findings: That inland wetland regulated areas exist on the existing and proposed lots of Melko's property; that the application and supporting documents demonstrate that regulated activities are proposed to be conducted in regulated areas; that Melko's Site Plan depicts four independent soil scientist's wetland delineations which vary as to the soil type, extent and location of wetlands on the property; that while a developer can construct a building within a ten to fifteen foot wide buffer around the foundation, actual occupation of a single family home requires a reasonable amount of space for yard area in order to keep nature at bay; that Melko proposes to build the house foundation on grade and within a regulated area; that the proposed house, if built, will have a significant adverse effect upon the adjacent wetland; and, that the denial of this application will not constitute a taking of Melko's land for a public purpose. (ROR, Item 62.) The commission concluded that the application, if approved, would have a significant, adverse and unnecessary effect both on the regulated area and on the proposed house and yard area. (ROR, Item 62.)
The commission further argued that this appeal should be dismissed because Melko failed to offer sufficient evidence concerning the existence or absence of feasible or prudent alternatives, and Melko failed to submit runoff calculations as requested by the commission. In addition, the commission argues that the appeal should be dismissed because the commission's decision is supported by substantial evidence in the record. CT Page 380-JJ
The commission's denial of the plaintiff's application is supported by substantial evidence in the record and, therefore, the appeal should be dismissed.
MILTON H. BELINKIE JUDGE TRIAL REFEREE