[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Rachel T. deRham, Trustee, and Sally T. Bissell, Trustee, appeal from the October 23, 1995 decision of the defendant, the Town of Ellington Zoning and Planning Commission, denying without prejudice the plaintiffs' application to subdivide their real property.
The defendant denied the plaintiff's subdivision application because of "an incomplete plan of development and lack of drainage report as required." The defendant acted pursuant to General Statutes §§ 8-25 and 8-26 and the town's subdivision regulations. The plaintiffs appealed pursuant to General Statutes § 8-8 (a)(1).
The defendant's October 23, 1995 decision was published in the Journal Inquirer on October 27, 1995. The plaintiffs commenced this appeal on November 9, 1995, by service of process upon the clerk of the Town of Ellington Planning and Zoning Commission, and the assistant town clerk of the Town of Ellington. The defendant filed the return of record on September 26, 1996 and its answer on October 31, 1996. The plaintiffs filed their brief on November 8, 1996 and the defendant filed its brief on January 10, 1997. A preliminary hearing was held on March 19, 1997 and as a result a supplemental return of record was filed on April 14, 1997. On May 8, 1997 a hearing was held at which time CT Page 8017 the plaintiff submitted a reply brief.
 II
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over an administrative appeal. Jolly,Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). In the present case, the plaintiffs are the record owners of the property that is the subject of the defendant's decision. In addition, the plaintiffs properly pleaded aggrievement. The plaintiffs served process on the defendant's clerk and the town's assistant clerk on November 9, 1995, which is less than fifteen days after the defendant's decision was published in the local newspaper on October 27, 1995. This appeal, therefore, is timely and the proper parties were served, pursuant to General Statutes § 8-8 (b), (e). In administrative appeals, the citation is analogous to the writ used to commence a civil action and directs a proper officer to summon the agency whose decision is being appealed. Sheehan v. Zoning Commission, 173 Conn. 408, 413,378 A.2d 519 (1977). There is a proper citation. Giving a bond with surety is, an essential element in taking an administrative appeal. Sheehan v. Zoning Commission, supra, 173 Conn. 410. The plaintiffs have filed a bond taken for the benefit of the defendant. All of the statutory requirements having been complied with this court has jurisdiction to decide these issues.
 III
The plaintiffs, as Trustees of the Thompson Family Land Trust, are the owners of a 94.25-acre parcel of land, which presently consists of forest and farmland in Ellington. The property is located between Reeves Road and Griswold Road. On June 27, 1995, the plaintiffs filed an application with the defendant for approval to subdivide the property into eight lots. The subdivision proposed three adjacent one-acre lots on Griswold Road and four adjacent one-acre lots on Reeves Road, each with a single family home, leaving the other eighty seven acres undeveloped. The lots were being subdivided and sold in an effort to raise money to maintain the rest of the property as a farm. Public hearings were held on August 28, 1995 and on September 27, 1995. At its October 23, 1995 meeting, the defendant denied the application by a vote of three to two. The plaintiffs claim the defendant exceeded its statutory and regulatory authority in making its decision and, therefore, the court should vacate the decision. CT Page 8018
 IV
"A municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency. . . . The planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. . . . If it does not conform as required, the plan may be disapproved." (Citations omitted; internal quotation marks omitted.) Reed v.Planning Zoning Commission, 208 Conn. 431, 433, 544 A.2d 1213
(1988). The trial court, in reviewing the action of a planning commission regarding a subdivision application, may not substitute its judgment on the facts for that of the planning commission. Weatherly v. Town Plan Zoning Commission,23 Conn. App. 115, 119, 579 A.2d 94 (1990). "Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record." Property Group, Inc. v.Planning Zoning Commission, 226 Conn. 684, 697, 628 A.2d 1277
(1993). "`The evidence, however, to support any such reasons must be substantial.'" Id., quoting Huck v. Inland Wetlands Watercourses Agency, 203 Conn. 525, 540, 525 A.2d 940 (1987). In an appeal denying the application for a subdivision, the court must decide whether the reasons given by the commission are valid. RK Development Corp. v. Norwalk, 156 Conn. 369, 377,242 A.2d 781 (1968). The burden of proof to demonstrate that the defendant acted improperly is upon the plaintiffs. Westport v.Norwalk, 167 Conn. 151, 157, 355 A.2d 25 (1974).
As previously noted the commission gave two reasons for its denial of the application. The first stated reason was that the application was incomplete and the second was a lack of a "drainage" report. The court inquired at the hearing as to the term drainage report. Counsel for both parties agreed that while the commission referred to a drainage report in their decision there is no reference in the subdivision regulations to such a report. Counsel for the parties further stipulated that when the commission used the term "drainage report" they in fact were referring to a "hydrological report". (See Transcript of Appeal Hearing, [TR], 5/8/97 pg. 20-21).
Also at the hearing on the appeal, the defendant's counsel "stipulated" that the defendant could not require the plaintiffs CT Page 8019 to, submit a plan of development for the eighty seven acres not being developed. (Tr., 5/8/97, p. 29) Thus, the only basis for the defendant's decision is the lack of a hydrological report as set forth in the Subdivision regulations.
The plaintiffs argue that (A) the regulations require a hydrological report, but only if requested by a commission member, which was not done, (B) the testimony of the plaintiffs' land surveyor constituted the necessary report and (C) the defendant's decision is an improper effort to require the plaintiffs to upgrade Griswold Road.
"General Statutes § 8-25 requires commissions to adopt subdivision regulations and grants them the power to govern the subdivision of land." Weatherly v. Town Plan Zoning Commission, supra, 23 Conn. App. 120. General Statutes § 8-25 (a) states, in pertinent part, "[s]uch regulations shall provide . . . that proper provision shall be made for water, drainage and sewerage." The defendant has adopted the Subdivision Regulations of the Town of Ellington. In the Design Standards Section of the regulations, Section 4.09 states that a developer is responsible for constructing adequate facilities for the control, collection, conveyance and acceptable disposal of storm water, other surface water and subsurface water. Section 4.10 provides, in pertinent part, "[a]ll designs shall be based on the maximum ultimate development of the entire watershed." In addition, this section states "zero increase in rate of storm water runoff shall be the criteria utilized in the design of the drainage system for the proposed subdivision." In the Application Requirements Section of the regulations, Section 2.04(4) states that when "appropriate, and when, in the [judgment] of the Commission, the scale, scope of work and complexity of the subdivision warrant," a hydrological report shall be provided. "Hydrological Report — Design of the storm drainage system to include special structures, shall be supported by a hydrological report prepared by a civil engineer licensed as a professional engineer in the State of Connecticut. This report shall, at a minimum, include a copy of the base map used to determine watershed and drainage patterns, and the methodology used to compute runoff and pipe sizes."
The decision of the defendant is based on the lack of a hydrological report as required by § 2.04(4) of the regulations. CT Page 8020
This court finds that the defendant is authorized to adopt regulations and the record demonstrates the defendant has adopted regulations requiring a subdivision developer to provide drainage plans, pursuant to sections 4.09 and 4.10, and a hydrological report when appropriate and "when, in the judgment of the commission, the scale, scope of work and complexity of the subdivision warrant," pursuant to section 2.04(4).
The first hearing before the defendant was held on August 28, 1995. Early in the meeting, town planner Joseph Baker (Baker) read a letter that had been sent by fax to the defendant that afternoon from James Thompson (Thompson) of Buck Buck Engineers, the defendant's engineer, recommending the defendant obtain (1) a plan of development for the entire property, (2) a drainage plan for the entire property demonstrating no increase in runoff and (3) a, proposal for the improvement of the frontage of Griswold Road and Reeves Road. Thompson did not attend the hearing. During the hearing, Baker and chairperson Francis Prichard (Prichard) expressed their concerns about the possible future development of the Land Trust. They pressed the plaintiffs for information on lot designs for the remaining parcel, plans to improve Griswold Road which is currently a dirt road, and plans to install sidewalks on Reeves Road and Griswold Road. Members of the public commented on the poor condition of and the existing drainage problems on Griswold Road.
Ken Peterson (Peterson), a licensed land surveyor made a presentation to the defendant on behalf of the plaintiffs. He explained the water flow on each of the proposed seven lots. He stated that "configuration of the topography on the lots off of Reeves Road is such that all of the surface water flows would be on to the Thompson Family Land Trust Property. There would be no drainage that would be coming from these lots on to Reeves Roads or onto other property owners." He further stated that there is a northwesterly slope to the Thompson property, so should there be any surface water running off from driveways, houses, rooftops, or lawn areas, the surface water would continue on to the Land Trust. He further stated that the plan shows these houses will have footing drains and the discharge points of all the footing drains will be towards the Land Trust.
As to the Griswold Road lots, Peterson stated that the contours of the first third of each of the lots was such that surface water flows would be towards Griswold Road. The remainder of each lot would flow back on to the Land Trust. Also at the CT Page 8021 hearing, the plaintiffs addressed the concerns set forth in Thompson's letter. Peterson said the requests for a plan of development and a plan for drainage of the entire parcel were premature, as the application was for only seven lots. The plaintiffs' counsel argued that the law does not allow the defendant to require the plaintiff to submit plans for the remaining parcel or to require the plaintiffs to improve Reeves Road and Griswold Road.
During the August hearing, the plaintiffs focused on the drainage issues of the seven proposed lots while Baker, the town planner, and Prichard, the defendant's chair, focused on the possible development of the entire property. As Baker said, "I think it's reasonable for the commission to ask for a potential configuration or if there's a number of alternatives that the land holder is thinking about developing, I can certainly, within the realm of the commission, ask to see what that thought process is so that they could look at this and see if this makes sense in terms of orderly development of the community and the order of development in that particular area of the town." (ROR, Item #42, Tr. of 8/28/95 Hearing, p. 9)
The meeting was continued for one month with the defendant asking the plaintiffs for a plan showing the entire parcel developed to its capacity. In addition, Prichard asked Peterson to meet with Thompson to "figure out what's going to happen with the drainage"
The September 27, 1995 meeting began with Baker reading into the record a legal opinion from the defendant's counsel advising the defendant that it could not require the plaintiffs to improve Reeves Road and Griswold Road and could not require the plaintiffs to install sidewalks along these public roads, but could require the plaintiffs to make proper provision for drainage. Baker also read into the record a letter Thompson sent to the defendant the previous day. Thompson did not attend the hearing. This letter states that Thompson saw a plan prepared by the plaintiffs showing an interior road and general drainage, but that the plan does not qualify as a plan of development for the entire parcel. The letter then listed several issues and recommended the plaintiffs' application not be approved until the issues were satisfactorily addressed.
Once again, most of the comments from Baker and members of the commission at this meeting focused on possible development of CT Page 8022 the remaining parcel. Baker and Prichard discussed the potential plan of development for the Land Trust the plaintiffs had prepared after the August meeting. The plaintiffs said they did not intend to use this plan, but prepared it, as requested, to show one way the remaining acreage could possibly be developed.
Peterson addressed some of the issues mentioned in Thompson's letter. In one issue, Thompson noted that the defendant "should receive a definite commitment for the installation of storm water retention facilities on the remaining parcel, a hydrologic report indicating the size and location of the structure that is necessary to ensure no increase in runoff from the site for the proposed development and from the entire parcel, if developed to its zoned maximum." (ROR, Item #42, Tr. of 9/27/95 Hearing, p. 5) Peterson responded to this recommendation by saying, "[w]hat he's asking for is for us to develop a graded system should this whole site be developed to its maximum which we don't have any intention to do and what you would do with retention and how it would be sized. I think we've done enough to show you where the drainage system would go, where a retention basin or basins could be built and in those locations they can accommodate increase in surface water flows. You size them to do that. It's our land and if there's a need to do that, that's where they'd be done. The topography of the site would indicate where retention basins could be built. I think we've addressed that sufficiently." (ROR, Item #42, Tr. of 9/27/95 Hearing, p. 320) After Peterson's response there were questions about drainage on Reeves Road, Griswold Road and on the remaining parcel when it is developed. Again, neighbors spoke, complaining about the existing drainage and flooding problems on Griswold Road. The hearing was then closed.
This court finds that the dispositive issue in this case is whether the commission requested a hydrological report, pursuant to Regulation 2.04(4). The plaintiffs argue that while the town planner and town engineer requested a speculative drainage plan for the entire property, the commission members never requested a hydrological report. The defendant counters that the plaintiffs were well aware of the defendant's concern about drainage during both public hearings. The defendant points to Thompson's August and September letters that address drainage issues, in particular the September letter that identified the need for a hydrological report. In addition, the defendant argues that while Prichard's, comments such as "we've got to figure out what's going to happen with the drainage" (ROR, Item #42, Tr. of 8/28/95 Hearing, p. 21) CT Page 8023 may not be a direct request for a hydrological report, these comments demonstrate Prichard's interest in obtaining more complete drainage information.
The record shows that in his September 26, 1995 letter, Thompson recommended a submission of a hydrological report. (ROR, Item #42, Tr. of 9/27/95 Hearing, p. 5) A recommendation by the engineer, however, does not constitute a request from the commission. Laufer v. Conservation Commission, 24 Conn. App. 708,713, 592 A.2d 392 (1991). While the defendant was entitled to technical and professional assistance by its staff, it was the defendant's role to adopt Thompson's recommendation in order to require the plaintiff to submit a hydrological report. Spero v.Zoning Board of Appeals, 217 Conn. 435, 445, 586 A.2d 590 (1991). In Spero v. Zoning Board of Appeals, the court said that the agency was entitled to obtain legal advice, but ultimately had to make its own decision. Id. See Laufer v. Conservation Commission, supra, 24 Conn. App. 713 ("[w]hile the agency may seek advice and assistance from a professional staff, it is the agency itself that must find the facts and apply the statutory criteria to those facts" ); Manatuck Associates v. Conservation Commission,28 Conn. App. 780, 792, 614 A.2d 449 (1992) ("commission was not obligated to adopt the conclusions of its original staff report"). Thompson's letter enumerated eleven issues, some of which were addressed by Baker, while others were not discussed. Peterson addressed the issue of a hydrological report on behalf of the plaintiffs, basically saying it was his professional opinion such a report was not needed for the seven lots and was premature for the development of the remaining parcel.
After Peterson's response to the recommendation for a hydrological report, Baker and several members of the commission expressed concerns about the drainage on the proposed lots. Baker inquired about the street drainage. Commission member Paul Vachon asked about putting drainage on Griswold Road. Commission member Clifford Aucter asked about drainage on the Reeves Road lots. None of the comments made by the members of the commission, however, can be construed as a finding that the proposed subdivision warranted a hydrological report. There is not substantial evidence in the record indicating that it was appropriate, and in the commission's judgment, that the scale, scope of work and complexity of the proposed seven-lot subdivision warranted a hydrological report. This situation is analogous to that in Property Group, Inc. v. Planning ZoningCommission, supra, 226 Conn. 703, in which the planning CT Page 8024 commission approved the subdivision application with the condition that the plaintiff widen the public highway abutting the site. The Connecticut Supreme Court found that the record did not support a finding by the commission that the proposed development required a widening of the road. The court noted that "the commission members neither mentioned the regulation nor addressed its requirements." Id. In the present matter, the defendant did not make the finding that the proposed development warranted a hydrological report. While the regulations authorize the defendant to require a hydrological report, the regulations require the defendant first make a finding that the report is appropriate and the scale, scope and complexity of the subdivision demand such a report. As earlier stated the parties agree, a hydrological report is not the equivalent of a drainage plan. (Tr. of 5/8/97 Appeal Hearing, pp. 21, 37, 39) Comments from members of the commission about drainage issues do not constitute a request for a hydrological report. The defendant's "action was controlled by the regulations adopted for its guidance." (Internal quotations marks omitted.) Westport v.Norwalk, supra, 167 Conn. 162. Without a request for a hydrological report from the defendant, the regulation requiring such a report did not apply, and the defendant exceeded its statutory authority in denying the application for the plaintiffs' subdivision for the lack of a hydrological report.[1]
Accordingly, this court sustains the appeal.
Zarella, J.