LORD FAMILY OF WINDSOR, LLC, ET AL. *v.* INLAND WETLANDS AND WATERCOURSES COMMISSION OF THE TOWN OF WINDSOR ET AL.
(AC 27906)

Bishop, Lavine and Pellegrino, Js.

Argued May 22—officially released August 21, 2007

*Michael A. Zizka,* for the appellants (plaintiffs).

*Richard A. Vassallo,* for the appellee (named defendant).

*Opinion*

BISHOP, J. This case addresses whether the stated concerns and apprehensions of an inland wetlands agency amount to substantial evidence sufficient to

uphold the agency's denial of an application to modify a subdivision plan. The plaintiffs, the Lord Family of Windsor, LLC, and Robert Daddario, appeal from the trial court's judgment denying their appeal from the decision of the defendant inland wetlands and watercourses commission of the town of Windsor (commission),[1] which had rejected the plaintiffs' application to modify a proposed and previously approved subdivision plan. We conclude that the record does not contain substantial evidence necessary to sustain the commission's denial. Accordingly, we reverse the judgment of the trial court.

The following facts and procedural history are relevant to our assessment of the plaintiffs' appeal. On February 1, 2005, the commission granted a permit to the plaintiffs to conduct regulated activities on wetlands and watercourses in connection with a plan for a subdivision on a parcel of land known as 355T Prospect Hill Road in Windsor. The subdivision plan contemplated the construction of three new roads that would access the existing town roads of Prospect Hill Road, Pierce Boulevard and Gary Lynn Lane.

On February 24, 2005, the plaintiffs informed the commission of their desire to change the original subdivision plan to eliminate the Gary Lynn Lane access road. The commission discussed the effects of the proposed change with the plaintiffs during a special meeting on March 16, 2005. The certified meeting minutes indicate that in addition to eliminating the Gary Lynn Lane access road, the plaintiffs planned to use an existing partially paved road, the "neck" road, during the initial phase of construction in order to bring equipment and workers onto the site. The neck road crosses the Phelps

---

[1] The commissioner of environmental protection also was named as a defendant but is not a party to this appeal. We therefore refer in this opinion to the commission as the defendant.

Brook watercourse by way of a culvert. During the course of the meeting, the commissioners asked many questions about the ability of the culvert to sustain the weight of construction vehicles as well as the potential impact of increased traffic on the Prospect Hill access road.

After the commissioners discussed their concerns with the plaintiffs and their representatives, a motion was made to approve the application pending a favorable report from the town engineer on the culvert. The motion failed. On April 1, 2005, the commission's agent wrote a letter to the plaintiffs, denying their application to remove the Gary Lynn Lane access road for the following stated reasons: "(1) Increased traffic across bridge to Prospect Hill Road would cause increase of pollutants going into Phelps Brook. It was recommended that a traffic engineer's report showing effects of increased traffic over the bridge on Phelps Brook from deposition by air, snow removal, or runoff would have been helpful. (2) The Commission previously approved three access points to the subdivision determining it was the most feasible and prudent alternative to minimize the impact on the brook by traffic across the bridge to Prospect Hill Road. (3) The [ten foot] wide partially paved path crosses the brook between two pond areas at a narrow point over a culvert that would need to be evaluated by an engineer. The evaluation needs to include current condition and strength of the culvert, comparison of width of vehicles to the width of the path and strong erosion and sedimentation controls." Consequently, the plaintiffs appealed to the trial court from the denial of their application to amend their permit.

On appeal to the trial court, the plaintiffs claimed that the commission's decision was arbitrary, illegal and an abuse of discretion. In response, the court found

in favor of the commission, concluding that the commissioners' concerns about the structural integrity of the culvert and the pollution from the increased traffic were valid reasons for the denial of the proposed modification. This appeal followed.

In this appeal, the plaintiffs claim that the commission's denial of their proposal to eliminate the Gary Lynn Lane access road was based on speculative concerns rather than substantial evidence. Additionally, the plaintiffs claim that the commission did not have the power to deny their application because the proposed changes to the subdivision plan did not involve a regulated activity.

As an initial matter, we address whether the proposed changes involving the elimination of one access road and the use of the neck road for construction related activities were properly before the commission. The plaintiffs claim, in sum, that because driving a motor vehicle is not itself a regulated activity, the commission had no authority to deny the application on the basis of the movement of vehicles to and from and within the construction site. We are not persuaded. According to General Statutes § 22a-38 (13), a regulated activity is "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses . . . ." The commission's regulations incorporate this definition and expand the relevant area of regulation to include a 100 foot upland review area. Windsor Inland Wetlands and Watercourses Regs., § 2.1 (y).

Additionally, pursuant to the authority delegated to municipal inland wetlands agencies by statute, inland wetlands agencies are authorized to promulgate such additional regulations as are necessary to protect the wetlands and watercourses within their municipality.

See General Statutes § 22a-42. Under the commission's regulations, the commission is authorized to evaluate any application which may involve a "significant impact activity" on the wetlands or watercourses. Windsor Inland Wetlands and Watercourses Regs., § 7.3 (q). In relevant part, significant impact activities are defined as "[a]ny activity which causes or has the potential to cause pollution of a wetland or watercourse." Id., § 2.1 (cc) (6). Here, the plaintiffs planned to build a subdivision on wetlands and watercourses. Therefore, the commission was well within its authority to examine and to evaluate the impact that the construction of the subdivision might have on the wetlands and watercourses.[2]

Having established that the commission had the authority to examine and to evaluate the impact of the plaintiffs' proposed changes, we now address whether the record shows that the commission had the requisite substantial evidence to deny the plaintiffs' proposed changes.

We begin by setting forth the applicable standard of review. "[I]n an appeal from a decision of an inland wetlands commission, a trial court must search the record of the hearings before that commission to determine if there is an adequate basis for its decision. . . . Even if the agency's reasons for denying an application are merely speculative, the reviewing court must search the record for reasons to support the agency's decision . . . and, upon finding such, uphold that decision regardless of the language used by the agency in stating its reasons for the denial." (Citation omitted; internal quotation marks omitted.) *Manatuck Associates* v. *Conservation Commission*, 28 Conn. App. 780, 784, 614 A.2d 449 (1992). "[T]he reviewing court must sustain

[2] We decline to parse the method by which construction vehicles enter a construction site from the actual construction of the subdivision when the construction itself is a regulated activity that requires a permit from an inland wetlands agency.

the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . . The reviewing court must take into account [that there is] contradictory evidence in the record . . . but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence . . . ." (Internal quotation marks omitted.) *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587–88, 628 A.2d 1286 (1993).

The standard of review for whether the substantial evidence test was correctly applied by the court in its review of a commission's decision is a question of law and is therefore subject to plenary review. *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission*, 269 Conn. 57, 70, 848 A.2d 395 (2004). In an appeal from the judgment of a trial court regarding the decision of an inland wetlands agency, this court must determine "whether the trial court correctly concluded that the [agency's] act was not arbitrary, illegal or an abuse of discretion." (Internal quotation marks omitted.) *Horace* v. *Zoning Board of Appeals*, 85 Conn. App. 162, 165, 855 A.2d 1044 (2004).

"In determining the impact of a proposed activity on inland wetlands and watercourses, an inland wetlands

agency must consider the criteria established in the act and in applicable municipal regulations." *River Bend Associates, Inc.* v. *Conservation & Inland Wetlands Commission,* supra, 269 Conn. 72. Our statutes require that a municipal inland wetlands agency[3] "take into consideration *all relevant facts and circumstances,* including but not limited to: (1) The environmental impact of the proposed regulated activity on wetlands and watercourses; (2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses; (3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses; (4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, including the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources; (5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and (6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or

---

[3] General Statutes § 22a-41 (a) specifically provides that the factors for consideration are required of the commissioner of environmental protection, but these criteria are also applicable to municipal wetlands agencies pursuant to General Statutes § 22a-42 (f).

reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses." (Emphasis added.) General Statutes § 22a-41 (a) (1) through (6).

The commission's regulations incorporate the statutory language and factors elucidated in § 22a-41 (a) and permit the agency to consider the following evidence in its decision: the permit application and its supporting documentation, public comments, evidence and testimony, reports from other municipal agencies and comments from potentially affected adjacent municipalities, regional organizations and state agencies. Windsor Inland Wetlands and Watercourses Regs., § 10.1.

Having identified the relevant law and regulations, we now look to the record to see if substantial evidence supports any one of the reasons given by the commission for the denial of the plaintiffs' request to amend their permit. According to the letter signed by the commission's agent on April 1, 2005, the commission denied the application because first, the higher traffic volume on the Prospect Hill access road would result in increased levels of pollution in Phelps Brook and, second, the structural integrity of the culvert might be compromised by the weight of construction vehicles resulting in increased levels of pollution and disturbance of the Phelps Brook watercourse.[4] We examine the record separately for probative evidence supporting these reasons for denial.

The factual record consists of the minutes of the commission's March 16, 2005 special meeting at which the commission discussed the proposed amendment

---

[4] We agree with the court's reasoning that § 11.1 of the regulations specifically authorizes an agent to act on behalf of the commission, and, therefore, the reasons provided in the letter for the permit denial are lawful and made with the authority of the commission.

with the plaintiffs and their representatives. The minutes indicate that the commission's vice chair asked whether the plaintiffs had conducted an impact study on the effect of eliminating the Gary Lynn Lane access road. She expressed concerns that consolidating all of the traffic of the first phase of the subdivision onto one road might contaminate the Phelps Brook watercourse. The plaintiffs' engineer replied that no traffic study had been conducted but that the plan calls for the Prospect Hill access road to have a system by which all runoff water is collected in a settling basin and passed through a stone filter before being sheet flowed across the wetlands. Both the commission's agent and the vice chair stated that there might be other pollutants, besides runoff water, created by the increased traffic. Finally, the vice chair indicated that she would not be supporting the proposal because "[i]t doesn't take a rocket scientist to figure out that sometimes cars drop oil, and salts get into the wetlands and all kinds of things happen." Notably, the record is devoid of any evidence that the use of either the neck road or the Prospect Hill access road would or was likely to contaminate the water.

When considering pollution, "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control . . . ." *Feinson* v. *Conservation Commission,* 180 Conn. 421, 429, 429 A.2d 910 (1980).[5] The commission's vice chair did not hold herself out as an expert in pollution control. Even if the vice chair was a qualified pollution expert, "[e]vidence of general environmental impacts, mere speculation, or general concerns do not qualify as substantial evidence." *River Bend Associates,*

---

[5] In *Feinson* v. *Conservation Commission,* supra, 180 Conn. 429, the court held that the defendant conservation commission's failure to provide a timely opportunity for rebuttal of its finding compounded the lack of substantial evidence, thereby running afoul of the plaintiff's due process rights.

*Inc.* v. *Conservation & Inland Wetlands Commission,*
supra, 269 Conn. 71, citing *Connecticut Fund for the
Environment, Inc.* v. *Stamford,* 192 Conn. 247, 250,
470 A.2d 1214 (1984). Furthermore, inland wetlands
agencies are not "little environmental protection agen-
cies"; air, noise and environmental problems caused by
increased traffic are general environmental problems
that are not properly within the scope of an inland
wetlands agency. *Connecticut Fund for the Environ-
ment, Inc.* v. *Stamford,* supra, 250–51. The vice chair's
conclusion that passing traffic might drop pollutants
into the wetlands fails to satisfy the substantial evi-
dence test.

The second reason for the commission's denial of the
plaintiffs' proposed changes focuses on the structural
integrity of the existing culvert on the neck road. The
commission's agent testified that the road had a steep
slope and was particularly narrow where it crossed the
culvert making her concerned that heavy trucks might
have difficulty traversing the culvert. She also testified
that there had been some beaver activity around the
culvert, stating that "[w]e don't know how sound that
thing really is. I would hate to have one of your logging
trucks end up in the middle of Phelps Brook."[6]

The credibility of the agent's testimony is not at issue.
See *Feinson* v. *Conservation Commission,* supra, 180
Conn. 425. Rather, the issue is whether her testimony
amounted to substantial evidence sufficient to support
the commission's denial on the basis of the vulnerability
of the culvert. Her statements, compounded with her
later recommendation that the town's engineer should
evaluate the culvert for safety purposes, indicate that

---

[6] It seems to be a matter of common sense that the plaintiffs also would
share the commission's concern about their trucks falling off the culvert into
the Phelps Brook watercourse and would be careful to assess its soundness
before proceeding to bring heavy trucks over it.

she was unaware of the actual status of the culvert and was speculating about its strength. The only facts supporting the actual condition of the culvert were those provided by the plaintiffs. The plaintiffs testified that the neck road had successfully supported the removal of 20,000 to 30,000 yards of fill and more recently, the weight of an excavator and its transporting tractor trailer.

The evidence in the record fails to constitute anything more than speculation that the existing culvert might be compromised by the construction vehicles. A mere worry is not substantial evidence. Because the concerns about the structural integrity of the culvert were speculative, the commission's denial was arbitrary and capricious. See 5 U.S.C. § 706 (2) (A); *Marsh* v. *Oregon Natural Resources Council*, 490 U.S. 360, 375–76, 109 S. Ct. 1851, 104 L. Ed. 2d 377 (1989) (stating that standard of review for agency's decision is whether decision arbitrary and capricious); see also *Horace* v. *Zoning Board of Appeals*, supra, 85 Conn. App. 165.

Relief for appeals from agency decisions has developed unique case law that does not strictly follow statutory provisions. See R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 35.1, p. 319. In the case of inland wetlands agencies, this is due in part to periodic changes in the statutes; id.; and in part to the legislature's recognition of the irreplaceable and fragile nature of wetlands and watercourses. See generally General Statutes § 22a-36. Generally, "[w]hen agency action is overturned . . . because of invalid or insufficient findings, we have held that a court must ordinarily remand the matter under consideration to the agency for further consideration. . . . A direct order to the commission is therefore legally unwarranted and the case must be remanded to the commission for further consideration of any conditions that should be attached to the issuance of the permit as

supported by evidence in the present record." (Citation omitted; internal quotation marks omitted.) *Strong* v. *Conservation Commission*, 28 Conn. App. 435, 443, 611 A.2d 427 (1992), appeal dismissed, 226 Conn. 227, 627 A.2d 431 (1993).

The judgment is reversed and the case is remanded with direction to render judgment remanding the matter to the commission for proceedings consistent with this opinion.

In this opinion the other judges concurred.