THEODORE H. MARTLAND ET AL. *v.* ZONING
COMMISSION OF THE TOWN OF
WOODBURY ET AL.
(AC 29425)

DiPentima, Gruendel and Robinson, Js.

Argued January 6—officially released June 2, 2009

*Duncan J. Forsyth,* with whom were *Richard P. Roberts* and, on the brief, *Jennifer Sills Yoxall, Anne D. Peterson* and *Maureen Danehy Cox,* for the appellants (defendants).

*Franklin G. Pilicy,* for the appellees (plaintiffs).

*Opinion*

DiPENTIMA, J. The defendants,[1] the zoning commission of the town of Woodbury (commission), its chairman and the town clerk, appeal from the judgments of

___

[1] Martin Overton, chairman of the zoning commission, and Rita Connelly, the town clerk of Woodbury, were also named as defendants and have joined in the appeal.

the trial court sustaining the administrative appeals of the plaintiffs, Theodore H. Martland and Martland Management, Inc.[2] On appeal, the defendants claim that the court improperly (1) determined that the record did not contain substantial evidence with respect to a specific condition imposed in connection with the approval of a special permit for pond excavation and (2) failed to determine that the condition was integral to the approval of the special permit. We disagree with the defendants' first claim but agree with their second claim. Accordingly, we reverse the judgments of the trial court.

The following facts are relevant to our resolution of the defendants' appeal. The plaintiffs submitted an application, dated May 6, 2004, for a special permit to excavate earth materials from a portion of Riker Pond. This pond is located on Quassuk Road in Woodbury. The stated purpose of this excavation was to "diversify its habitat." The proposed activity would have removed approximately 17,000 cubic yards of soil from the floor of the pond, increasing the pond's depth to approximately twelve feet. The plaintiffs also proposed creating an unpaved road to haul excavated materials to a neighboring property. The road was to be fashioned from approximately 10,000 cubic yards of sand and gravel from an existing berm that ran along the western side of the pond. The berm, sloped and approximately 1345 feet in length, varied in height from 3.5 to eighteen feet above the water level of the pond and in width from forty to 120 feet.

Following several hearings and a modification of the proposed activities, the commission approved the plaintiffs' application and granted the special permit on September 28, 2004. The commission imposed certain

[2] Martland, along with Lisbet Morris and Stephen Morris, owns the property that is the subject of these proceedings. Martland Management, Inc., submitted the application for a special permit and also is a plaintiff.

conditions on the special permit. Condition (g) provided: "Upon completion of the excavation of the pond, the applicant shall restore all disturbed areas above the water level to a condition comparable to the conditions that existed prior to the excavation of the pond." The commission required the plaintiffs to submit a site restoration plan prepared by a landscape architect that demonstrated compliance with this condition.

By way of a complaint dated October 11, 2004, the plaintiffs filed an appeal with the Superior Court. They alleged that the restoration condition was vague, not consistent with the application and would make the excavation of the pond economically and practically unfeasible. The plaintiffs further claimed that the commission's actions were illegal and arbitrary and constituted an abuse of discretion.

On October 11, 2005, the plaintiffs filed a second application with the commission seeking to amend the approved special permit. Specifically, they sought the removal of the restoration condition. After several public hearings, the commission unanimously voted to deny the second application on January 24, 2006. The plaintiffs then appealed from this denial in a second appeal to the Superior Court, claiming that the commission had acted illegally and arbitrarily and had abused its discretion. On April 24, 2006, the court granted the plaintiffs' motion to consolidate the two appeals.

In its memorandum of decision, the court began its analysis by reviewing the Woodbury zoning regulations. Section 5.2.8[3] provides that the plaintiffs' excavation of

[3] Section 5.2.8 of the Woodbury zoning regulations provides in relevant part: "Any excavating, grading, removal, and deposition of earth materials not permitted under or subject to the provisions of Section 15 of these Regulations or not exempt in accordance with Section 5.1.2 of these Regulations must receive a Special Exception and site plan approval in accordance with Section 10 of the . . . Regulations."

earth materials required a special permit[4] in accordance with § 10 of the regulations. Section 10.4 requires the commission, before granting a special permit, to consider certain criteria and to make a finding that the proposal would not be inconsistent with the welfare of the public. Subsection (e) of that regulation requires the commission to take into consideration the impact of a proposed use of property in residential areas.

The commission had determined that "the proposed activity has the potential to impact residential properties and as such it should be conditioned to the extent that it minimizes such impacts . . . ." The court noted that § 10.4.e.4 of the Woodbury zoning regulations provided the basis of this finding. That section states: "Consideration shall be given to the preservation and enhancement of existing topographic and/or vegetative buffers between adjoining properties." Woodbury Zoning Regs., § 10.4.e.4. The commission considered the berm to be a buffer between adjoining properties. The commission argued to the court that the berm constituted a "significant topographic feature that [served] as a vegetative and noise barrier." Specifically, it claimed that the berm separated the pond and residential properties from certain commercial activities, namely, a nursery and a mining operation.

The court concluded that the record did not contain substantial evidence to support the reasons proffered by the commission for the restoration condition. Specifically, the court determined that certain public comments regarding an increase in noise following the completion of the plaintiffs' project consisted of "the speculative general concerns of two laypersons." As to

[4] "The terms special permit and special exception are interchangeable." (Internal quotation marks omitted.) *Trumbull Falls, LLC* v. *Planning & Zoning Commission*, 97 Conn. App. 17, 20, 902 A.2d 706, cert. denied, 280 Conn. 923, 908 A.2d 545 (2006); see also T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 175.

the issue of the berm as a vegetative buffer, the court stated that there was no evidence that the berm functioned in that capacity. It concluded: "A thorough review of the record fails to show any substantial evidence or reliable factual basis from which the [commission] could conclude that the failure to restore the berm to its original natural contours would result in any increase in noise or that the restoration condition was necessary to provide a vegetative buffer. Accordingly . . . there is no substantial evidence in the record to show that the restoration condition was necessary to protect the public health, safety, convenience or property values as provided in . . . General Statutes § 8-2 (a), and the [commission] acted arbitrarily and abused its discretion by the imposition of the restoration condition on the special permit." (Internal quotation marks omitted.)

The court also rejected the defendants' argument that the restoration condition was integral to the approval of the special permit. It therefore sustained the plaintiffs' appeals and ordered the commission to delete the restoration condition and all provisions of the site restoration plan. This appeal followed.

Before addressing the specific claims of the defendants, we set forth the legal principles and standard of review that guide the resolution of the defendants' appeal. Our Supreme Court previously has "observed that [a] special exception allows a property owner to use his property in a manner expressly permitted by the local zoning regulations. . . . Nevertheless, special exceptions, although expressly permitted by local regulations, must satisfy [certain conditions and] standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience and property values [as required by § 8-2]. . . . Moreover, we have noted that the nature of special exceptions is such that their precise location

and mode of operation must be regulated because of the topography, traffic problems, neighboring uses, etc., of the site. . . . We also have recognized that, if not properly planned for, [such uses] might undermine the residential character of the neighborhood. . . . Thus, we have explained that the goal of an application for a special exception is to seek permission to vary the use of a particular piece of property from that for which it is zoned, without offending the uses permitted as of right in the particular zoning district." (Internal quotation marks omitted.) *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission*, 285 Conn. 381, 426–27, 941 A.2d 868 (2008).

"When considering an application for a special exception, a zoning authority acts in an administrative capacity, and its function is to determine whether the proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning board's action must be sustained if even one of the stated reasons is sufficient to support it. . . . In light of the existence of a statutory right of appeal from the decisions of local zoning authorities, however, a court cannot take the view in every case that the discretion exercised by the local zoning authority must not be disturbed, for if it did the right of appeal would be empty . . . . In reviewing the action of the trial court, we have to decide whether it could in logic and in law reach the conclusion that the [zoning authority] should be overruled. . . .

"[B]efore the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns,

such as parking or traffic congestion, would adversely impact the surrounding neighborhood. . . . Connecticut courts have *never* held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. . . .

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The . . . trial court ha[s] to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. . . . [O]n factual questions . . . a reviewing court cannot substitute its judgment for that of the agency." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Quality Sand & Gravel, Inc.* v. *Planning & Zoning Commission,* 55 Conn. App. 533, 537–39, 738 A.2d 1157 (1999); see also *A. Aiudi & Sons, LLC* v. *Planning & Zoning Commission,* 267 Conn. 192, 203–204, 837 A.2d 748 (2004); see generally R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 33.4, pp. 241–53.

I

The defendants first claim that the court improperly determined that the record did not contain substantial evidence with respect to the restoration condition.[5] Specifically, they argue that the record contained sufficient

---

[5] "In granting a special exception, the board may, in a proper case, impose a condition, but only where it is warranted by the regulations." *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 354, 232 A.2d 916 (1967).

evidence that the berm acted as a noise and vegetation buffer, and, therefore, the imposition of the restoration condition was proper. We disagree.

The evidence supporting the decision of a zoning board must be substantial. *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission,* 73 Conn. App. 442, 458, 807 A.2d 1089, cert. denied, 262 Conn. 928, 814 A.2d 379 (2002), overruled in part on other grounds by *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission,* 285 Conn. 381, 433, 941 A.2d 868 (2008). "This so-called substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. . . . The substantial evidence rule is a compromise between opposing theories of broad or de novo review and restricted review or complete abstention. It is broad enough and capable of sufficient flexibility in its application to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication. On the other hand, it is review of such breadth as is entirely consistent with effective administration." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission,* supra, 458; see also *Cambodian Buddhist Society of Connecticut, Inc.* v. *Planning & Zoning Commission,* supra, 427; 9A R. Fuller, supra, § 33:12, pp. 286–88. The corollary to this rule is that absent substantial evidence in the record, a court may not affirm the decision of the board. See *Bialowas* v. *Commissioner of Motor Vehicles,* 44 Conn. App. 702, 709, 692 A.2d 834 (1997).

A

With respect to the claim that the berm acted as a noise buffer, an examination of the record reveals the following. Eric Roundy, a resident of Quassuk Road, attended the July 13, 2004 public hearing and voiced his opposition to the plaintiffs' proposed activity. Roundy specifically noted his concern with the proposal to remove the berm. He stated that its removal would "cause not only a tremendous amount of temporary noise . . . but also, because of the removal of the berm, which—and the vegetation on the top of the berm—provides a substantial buffering area of noise both from the activities at [the nursery] and also the mining operation next door . . . . And, not only would we have to endure the temporary noise—however long it takes—the pumps, heavy equipment, so on and so forth, but I think it would, on a permanent basis, increase the noise in the neighborhood in general—particularly in the summer months with the lack of foliage on the trees on the berm as it exists now."

At the July 27, 2004 public hearing, another member of the public, Fred Leavenworth, presented his opposition to the plaintiffs' first application for a special permit. With respect to the issue of noise, Leavenworth stated: "This pond plays a part of the scenic role in the setting of that area of Quassuk Road. And the berm behind it is a part of the scenic character. We have discussed previously at this meeting about the removal of the berm opening out to noises that come from the nursery operation and their large equipment that discourages, and trees and so forth, for landscaping activity, and also the activity of the Tietz sand and gravel operation, which is very close by, with the berm acting at a—as a buffer. Just on the other side of the pond, we have one of the most densely populated sections of Woodbury . . . ."

Our review of the record also reveals that at the December 13, 2005 public hearing, Roundy spoke against the plaintiffs' second application and made the following comments relating to the issue of noise. "And, my concern is—is that if this berm is leveled down to almost the water line and then left flat, and not restored to its original contours and elevations, that much of the noise dampening characteristics of the berm would be lost. There is a considerable amount of noise that comes into the neighborhood from Young's Nursery. And, the berm is a tremendous factor, particularly in the—in the summertime months, with the vegetation on the berm, which is considerable—as a considerable dampening factor as far as the noise coming from the—the areas beyond it. A concern is—is that with that gone, and the way noise travels over water, that it will considerably increase the noise during most of the year and the heavy machinery that's operated by Young's Nursery. That will be a hardship on the neighborhood." Roundy submitted a letter to the commission at this hearing echoing his earlier testimony concerning the issue of noise.

The court concluded that the commission was presented only "with the speculative general concerns of two laypersons" and that "[a]bsent some reliable evidence in the record tending to show that if the berm was not restored to its natural condition, the noise would increase to a level which would cause harm to the public health, safety, convenience or property values . . . the [commission] could not logically conclude that any such harm or risk would occur." We agree with the court.

On the basis of our review of the entire record, we conclude that the evidence pertaining to the berm as a noise buffer is not substantial because it is not supported by anything other than speculation and conjecture on the part of those objecting to the plaintiffs'

proposed activities. See, e.g., *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission,* supra, 73 Conn. App. 463. Neither Roundy nor Leavenworth indicated any type of expertise that would buttress their lay opinion on the berm's ability to buffer the surrounding areas from noise. Their statements relating to the change in noise if the berm was not restored amount to speculation and a general, unsubstantiated concern. See, e.g., *Lord Family of Windsor, LLC* v. *Inland Wetlands & Watercourses Commission,* 103 Conn. App. 354, 365, 928 A.2d 1237 (2007) ("The evidence in the record fails to constitute anything more than speculation . . . . A mere worry is not substantial evidence."). There was no scientific data comparing the noise levels of the area with the berm in its present and proposed conditions. Cf. *Rhudy* v. *Fairfield University,* Superior Court, judicial district of Fairfield, Docket No. CV-99-0368012-S (August 18, 2000) (applicants for temporary injunction presented testimony of lighting experts and sound, noise or acoustics experts). Even if we assume arguendo that the noise level would increase as a result of the changes to the berm, the record is devoid of any evidence indicating how much of a noise increase would be permissible before the public health, safety, convenience or property values would be impacted. "A special permit may be denied only for failure to meet specific standards in the regulations, and not for vague or general reasons." (Internal quotation marks omitted.) *Bethlehem Christian Fellowship, Inc.* v. *Planning & Zoning Commission,* supra, 465.

We have explained that "[s]ubstantial . . . evidence is that which carries conviction. It is such evidence as a reasonable mind might accept as adequate to support a conclusion. It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established." (Internal

quotation marks omitted.) *Raczkowski* v. *Zoning Commission*, 53 Conn. App. 636, 641, 733 A.2d 862, cert. denied, 250 Conn. 921, 738 A.2d 658 (1999). In the present case, the record reveals that the evidence with respect to the berm as a noise buffer was inadequate to reach the necessary threshold to support the imposition of the condition by the defendant. Accordingly, the court properly determined that the requirement of the restoration condition was improper.

## B

With respect to the claim that the berm acted as a vegetative buffer,[6] an examination of the record reveals the following. The court stated that the record did not "contain any evidence that the berm presently functions [as a vegetative buffer]." The court further observed that the only evidence in the record contradicted the defendants' argument, as the plaintiffs' geologist, Charles Dimmick, testified that the berm was comprised of a "very sandy, gravely mix that does not really support vegetation all that well. We are going to be putting back two feet of the muck that is coming out of the pond, which is high in organic content. With that two feet deep, we will be able to support vegetation along the berm. So, we will be able to better vegetate the berm."[7]

The defendants direct our attention to a letter in the record that describes the berm as "vegetated" and a comment from a member of the public[8] stating that

---

[6] We note that contrary to the issue of the noise buffer, the applicable zoning regulation expressly requires consideration of the preservation of vegetative buffers between adjoining properties. See Woodbury Zoning Regs., § 10.4.e.4. This does not change our analysis.

[7] Additionally, at the July 27, 2004 public hearing, one of the plaintiffs' experts, engineer Kenneth Hrica, stated that the material in the berm is a sand gravel mix.

[8] We note that during the public hearings, Roundy commented on the existence of vegetation on the top of the berm. His comments consisted solely of his lay opinion that it was considerable.

"[r]estoration of the berm and its vegetation . . . ."[9] We agree with the court that the record lacks substantial evidence with respect to the berm as a vegetative buffer.

As we stated in part I A, substantial evidence is evidence that a reasonable mind accepts as adequate to support a conclusion, is more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established. See *Raczkowski* v. *Zoning Commission,* supra, 53 Conn. App. 641. Although there is evidence in the record that some vegetation existed on the berm, there is nothing to support the claim that it acted as a vegetative buffer. We conclude, therefore, that the court properly determined that there was no substantial evidence to support this aspect of the restoration condition.

II

The defendants next claim that the court improperly failed to determine that the restoration condition was integral to the approval of the application for a special permit. Specifically, the defendants argue that the record reveals that the application would not have been approved absent the restoration condition and that, therefore, the approval of the permit must be reversed in its entirety. We agree that the record is not clear whether the special permit would have been granted

---

[9] The defendants also argue in their brief that the trial court, after conducting a site walk, described the subject property as heavily treed. In it memorandum of decision, the court stated: "With permission and in the presence of counsel to the parties, the court conducted a site walk on the property and the surrounding neighborhood. The property is located in a tranquil rural setting and is heavily treed. From the walk along the top of the berm, no homes were visible except [Theodore Martland's] daughter's home situated to the south of the pond. There was evidence of significant beaver activity. At the time of the visit, there was no noticeable noise except an occasional automobile on Quassuk Road." The court described the property as heavily treed and made no specific mention as to the vegetation on the berm itself.

absent the restoration condition and, accordingly, reverse the judgments of the trial court.

The court, with respect to the issue of the severability of the restoration condition, made the following observations. "At the public hearings, the duration of the drainage and hauling activity on the site appeared to be of interest if not concern to the public and the commission. . . . Nonetheless, the [commission] found the plaintiffs' plan to be acceptable and approved the project activities. The special permit sought by the plaintiffs was for a limited purpose and activity, which was to be conducted over a limited period of time." (Citation omitted.) The court also noted that compliance with the restoration condition would require a considerable amount of the same type of activities about which the commission had expressed concerns, stating: "It strikes the court as counterintuitive to require that the excavation and earthmoving activity, which appeared from the record to be the most objectionable, be extended to allay nothing more than a speculative concern."

We begin our analysis of this claim by setting forth the appropriate standard of review. The severability of illegal conditions to a zoning permit is a question of law; therefore our review is plenary. See *Parish of St. Andrew's Church* v. *Zoning Board of Appeals*, 155 Conn. 350, 353–55, 232 A.2d 916 (1967).

"Although the imposition of an unlawful condition does not necessarily render a zoning authority's entire decision illegal and inefficacious . . . where the void condition was an essential or integral component of the zoning authority's decision it cannot be upheld." (Citation omitted.) *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 202–203, 635 A.2d 1220 (1994); *Floch* v. *Planning & Zoning Commission*, 38 Conn. App. 171, 173, 659 A.2d 746 (1995); see also *Vaszauskas* v. *Zoning Board of Appeals*, 215 Conn. 58, 66, 574 A.2d

212 (1990) (condition imposed by zoning authority severable from otherwise valid variance if removal would in no way destroy value or effectiveness of variance). Simply put, "[i]f an integral condition is invalid, then an otherwise valid variance is also invalid." *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 858, 670 A.2d 1271 (1996).

We conclude that the restoration condition was integral to the approval of the plaintiffs' special permit application. The commission's written findings expressly provided that "*all* of the conditions" imposed must be satisfied. (Emphasis in original.) Additionally, the commission unanimously rejected the plaintiffs' second application that sought specifically to remove the restoration condition. In reaching this conclusion, the commission referenced the original application and cited the town engineer's "recommendation that the majority of the berm west of the pond could remain and its existing elevation and identified conditions to minimize impacts on residential properties, which conditions included restoration of disturbed areas about the water level . . . ." (Internal quotation marks omitted.) The clear import of that decision is that the commission considered the restoration condition to be of some significance to its approval of the special permit.

After careful review of the entire record, we cannot conclude that the commission would have approved the special permit application if it had been aware that the restoration condition could not be enforced. See *DeBeradinis* v. *Zoning Commission*, supra, 228 Conn. 203. Accordingly, the court improperly determined that the restoration condition was not integral to and could be severed from the approval of the special permit application.

The judgments are reversed in part and the cases are remanded to the trial court with direction to render

judgments reversing the zoning commission's decision and remanding the cases for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.